## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**BLAKE A. RILEY,**

       **Petitioner,**

**v.**

    **Case No. 2:14-cv-02522**
    **Judge Smith**
    **Magistrate Judge King**

**TIM BUCHANAN, WARDEN,**

       **Respondent.**

## <u>REPORT AND RECOMMENDATION</u>

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the *Petition* (ECF No. 1), Respondent's *Return of Writ* (ECF No. 6), Petitioner's *Reply* (ECF No. 12), and the exhibits of the parties.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

### Facts and Procedural History

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of the case as follows:

> Appellant is the former boyfriend of Ashley Orndorff, the granddaughter of Larry and Becky Orndorff. Appellant was aware the Orndorffs generously supported Ashley. They had cash on hand in their home which was available to Ashley anytime. Appellant knew where the Orndorffs kept their cash and knew the home was usually unlocked. He also knew the Orndorffs had many firearms in their home.
>
> This case arose in the late-night hours of December 12, 2008 when intruders broke into the home of Larry and Becky Orndorff while the Orndorffs were sleeping and stole cash and property.
>
> The intruders decided to return in the early morning hours of December 13, 2008, and this time awakened Larry Orndorff. Both Orndorffs were held at gunpoint and their home was ransacked; they were forced to turn over cash, firearms, medication, and other

property. The Orndorffs believed there were two intruders in their home during the robbery, and Becky Orndorff heard one place a phone call instructing someone to come pick them up and to "pop the trunk ." Although most of the telephones in the house had been disabled, Becky Orndorff was able to call 911 at 1:59 a.m.

The Orndorffs did not get a good look at the intruders. Becky was aware that the one who led her to the garage at gunpoint had blue eyes and was taller than her husband, and of slender build, but he was wearing a ski mask or other type of head covering, black clothing, and gloves. Investigators were not able to find any useful fingerprints and did find marks in dust that confirmed the intruders wore gloves during the robbery.

The Muskingum County Sheriff's Office immediately focused on the phone call that had been placed during the robbery. They narrowed down the cell phone towers that picked up calls from the Orndorffs' residence. Next they narrowed down calls within twenty minutes of Becky Orndorff's 911 call, which were likely to be the intruders calling their getaway driver. Eventually this investigative work led to a list of six telephone numbers. Those telephone numbers led to interviews with several individuals including appellant, Ryan Barlow, and Jamie Hutton, among others. All denied their involvement in the home invasion.

The investigation yielded few leads until a woman named Keela Davis came forward in 2010 and told her mother that appellant, Ryan Barlow, and Jamie Hutton were the three who had perpetrated the Orndorff home invasion. A fourth individual, Brittany Funk, was the getaway driver. Law enforcement interviewed Barlow, Hutton, and Funk and developed additional leads to confirm their suspicion of appellant's involvement.

Appellant was initially charged as a juvenile and bound over to the Muskingum County Court of Common Pleas. After indictment and before the start of trial, the State dismissed two aggravated robbery charges and amended others with the result that appellant stood trial upon one count of aggravated burglary [R.C. 2911.11(A)(2)], theft of a firearm [R.C. 2913.02(A)(1)], theft in an amount greater than $1000 and less than $7500 [R.C. 2913.02(A)(1)], aggravated burglary [R.C. 2911.11(A)(2)] with a firearm specification [R.C. 2941.145], two counts of kidnapping [R.C. 2905.01(A)(2)] with a firearm specification [R.C. 2941.145], one count of theft of firearms [R.C. 2913.02(A)(1)], and one count of theft in an amount greater than $7500 and less than $150,000 [R.C. 2913.02(A)(1)].

The State's evidence at trial included the testimony of the Orndorffs and the investigators. Ryan Barlow and Jamie Hutton, appellant's accomplices, also testified, as did Brittany Funk. A former girlfriend of appellant's testified he admitted his involvement in the home invasion to her when she asked him about it, and said Jamie Hutton forced him into it.

Appellant presented a number of alibi witnesses who claimed the night of the robbery he was present at a performance by his sibling "Claudia" in Columbus, Ohio. The State presented some evidence to indicate this show was performed a different weekend than the one in question.

Appellant moved for judgment of acquittal pursuant to Crim.R. 29(A) at the close of appellee's evidence and at the close of all of the evidence; the motions were overruled. Appellant was found guilty as charged. The trial court determined that a number of the counts and firearm specifications merged, and sentenced appellant to an aggregate prison term of 23 years.

Appellant now appeals from the judgment entry of his conviction and sentence.

Appellant raises seven Assignments of Error:

"I. THE TRIAL COURT COMMITTED PLAIN ERROR IN ITS INSTRUCTION TO THE JURY IN 1) FAILING TO GIVE THE JURY THE REQUIRED CAUTIONARY INSTRUCTION REGARDING THE TESTIMONY OF AN ALLEGED ACCOMPLICE UNDER R.C. 2923.03(D) AS TO THE TESTIMONY OF RYAN BARLOW AND JAMIE HUTTON; AND 2) FAILING TO IDENTIFY BRITTANY FUNK AS A THIRD POTENTIAL ACCOMPLICE IN A CAUTIONARY INSTRUCTION."

"II. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT SENTENCED APPELLANT TO CONSECUTIVE SENTENCES ON COUNTS 4, 5, AND 6 OF THE INDICTMENT IN VIOLATION OF R.C. 2941.25— ALLIED OFFENSES OF SIMILAR IMPORT—AND THE DOUBLE JEOPARDY CLAUSES OF THE OHIO AND UNITED STATES CONSTITUTIONS."

"III. THE TRIAL COURT ERRED AS A MATTER OF LAW, TO THE PREJUDICE OF APPELLANT, BY CONVICTING APPELLANT, BECAUSE THIS CONVICTION WAS BOTH

AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE CONVICTION."

"IV. THE COURT OF COMMON PLEAS DID NOT HAVE SUBJECT MATTER JURISDICTION OVER THE CRIMINAL TRIAL BECAUSE BLAKE RILEY WAS UNDER EIGHTEEN YEARS OLD AT THE TIME OF THE ALLEGED OFFENSE AND WAS NOT PROPERLY BOUND OVER FROM THE JUVENILE COURT."

"V. DEFENDANT'S JUVENILE COURT BINDOVER TO ADULT COURT VIOLATED THE PRINCIPLES SET FORTH IN APPRENDI V. NEW JERSEY 530 U.S. 466 (2000), AND THUS VIOLATED HIS RIGHTS TO DUE PROCESS AND TO A JURY TRIAL."

"VI. THE COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT FAILED TO RECORD ALL THE PROCEEDINGS IN THIS CASE."

"VII. APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL DUE TO NUMEROUS ERRORS AND OMISSIONS WHICH PREJUDICED APPELLANT'S TRIAL."

*State v. Riley,* No. CT2012-0022, 2013 WL 1343548, at *1-2 (Ohio App. 5th Dist. March 22, 2013). Petitioner's convictions were affirmed on direct appeal, *id.*, and on September 4, 2013, the Ohio Supreme Court declined to accept jurisdiction of Petitioner's appeal from that decision. *State v. Riley*, 136 Ohio St.3d 1474 (Ohio 2013).

On December 3, 2014,[1] Petitioner filed the *Petition,* alleging that the trial court improperly failed to issue accomplice jury instructions (claim one); that the trial court improperly imposed consecutive terms of incarceration on allied offenses of similar import and in violation of the Double Jeopardy Clause (claim two); that his convictions are against the manifest weight of the evidence and that the evidence is constitutionally insufficient to sustain his convictions (claim three); that the trial court lacked jurisdiction because he was under

---

[1] Petitioner indicates that he executed the *Petition* on September 3, 2014. *Petition,* PageID# 62.)

eighteen years of age at the time of the alleges offenses and he was not properly bound over from juvenile court (claim four); that his bind over to adult court violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), his right to due process and his right to a jury trial (claim five); that the mandatory transfer of juvenile offenders to adult court violates due process (claim six); that the mandatory transfer of juvenile offenders to adult court violates the Equal Protection Clause (claim seven); that the mandatory transfer of juvenile offenders to adult court violates the Eighth Amendment (claim eight); that the trial court improperly failed to record all of the proceedings (claim nine); that he was denied the effective assistance of counsel (claim ten); and that the trial court improperly failed to consider his youth as a factor in sentencing, and his sentence is unconstitutionally disproportionate to the offenses charged (claim eleven).

Respondent contends that Petitioner's claims are either procedurally defaulted or fail to provide a basis for federal habeas relief.

## Procedural Default

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If the petitioner fails to do so, but the state still provides a remedy to pursue, the petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004). If, because of a procedural default, the petitioner can no longer present the relevant claims to a state court, the petitioner also waives the claims for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Edwards*

*v. Carpenter,* 529 U.S. 446, 451 (2000); *Coleman,* 501 U.S. at 724; *Murray v. Carrier,* 477 U.S. 478, 485 (1986).

In the Sixth Circuit, a court must undertake a four-part analysis to determine whether procedural default is a bar to a habeas petitioner's claims. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x. 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*). Specifically, the United States Court of Appeals for the Sixth Circuit requires the district courts to engage in the following inquiry:

First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. Second, the court must decide whether the state courts actually enforced the state procedural sanction. Third, the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.  *Maupin,* 785 F.2d at 138 (internal quotations omitted). Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes: (1) a substantial reason to excuse the default and (2) that he was actually prejudiced by the alleged constitutional error.  *Id.* "Cause" under this test "must be something external to the petitioner, something that cannot fairly be attributed to him [, *i.e*.,] some factor external to the defense [that] impeded [ ] efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level or failure to appeal at all.  *Id.* at 750.

Nevertheless, "'[i]n appropriate cases' the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally

unjust incarceration.'" *Murray*, 477 U.S. at 495 (quoting *Engle v. Isaac*, 456 U.S. 107, 135 (1982)).  *See also Coleman*, 501 U.S. at 750; *Lott v. Coyle,* 261 F.3d 594, 601–02 (6th Cir. 2001). This fundamental miscarriage of justice exception to the notion of procedural default requires a showing that, "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo,* 513 U.S. 298, 329 (1995).

Claims five, six, seven, eight, and eleven

In claim five, Petitioner alleges that his bind over to adult court violates *Apprendi v. New Jersey*, 530 U.S. at 466, his right to due process, and his right to a jury trial.  Petitioner raised this same claim on direct appeal; however, he failed to thereafter raise the claim in the Ohio Supreme Court.

In claims six, seven, and eight, Petitioner alleges that the mandatory transfer of juvenile offenders to adult court under Ohio law violates his rights to due process and equal protection, and his rights under the Eighth Amendment.  In claim eleven, Petitioner alleges that the trial court unconstitutionally failed to consider his youth when it imposed sentence, and imposed a sentence that is disproportionate to the offenses charged.  Petitioner raised none of these claims on direct appeal.

Petitioner may now no longer, by operation of Ohio's doctrine of *res judicata,* present any of the foregoing claims to the state courts*. See State v. Cole*, 2 Ohio St.3d (1982); *State v. Ishmail,* 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967) (claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*.). The state courts were never given an opportunity to enforce this procedural rule due to the nature of Petitioner's procedural default.

Ohio's doctrine of *res judicata* in this context is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman,* 501 U.S. at 732–33. To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964); *see also Jamison v. Collins,* 100 F.Supp.2d 521, 561 (S.D.Ohio 1998).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.,* the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that Ohio's doctrine of *res judicata* in this context does not rely on or otherwise implicate federal law. Accordingly, the Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

8

<u>Claims one and nine</u>

In claim one, Petitioner alleges that the trial court improperly failed to give accomplice jury instructions.  In claim nine, Petitioner alleges that the trial court failed to record all of the proceedings.  The state appellate court reviewed these claims for plain error only, due to Petitioner's failure to raise these claims before the trial court:

> Appellant's trial counsel did not request an instruction nor object to the instructions as given, and appellant concedes he has therefore waived all but plain error. Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The rule places several limitations on a reviewing court's determination to correct an error despite the absence of timely objection at trial: (1) "there must be an error, *i.e.*, a deviation from a legal rule," (2) "the error must be plain," that is, an error that constitutes "an 'obvious' defect in the trial proceedings," and (3) the error must have affected "substantial rights" such that "the trial court's error must have affected the outcome of the trial." *State v. Dunn*, 5th Dist. No.2008–CA–00137, 2009–Ohio–1688, citing *State v. Morales*, 10 Dist. Nos. 03–AP–318, 03–AP–319, 2004–Ohio–3391, at ¶ 19 (citation omitted). The decision to correct a plain error is discretionary and should be made "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Barnes, supra*, quoting *State v. Long*, 53 Ohio St .2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

*State v. Riley*, 2013 WL 1343548, at *3.

> [A]ppellant argues his conviction must be reversed because bench conferences and other colloquy between counsel and the court was not recorded. We disagree.
>
> Appellant failed to object or ask that sidebar discussions be recorded and therefore waived the issue. *State v. Drummond*, 111 Ohio St.3d 14, 2006–Ohio–5084, 854 N.E.2d 1038, ¶ 134. We will not reverse where an appellant failed to object and fails to demonstrate material prejudice. *Id*. Nothing in the record supports appellant's speculation the sidebar discussions dealt with matters relevant to appellate review. *See, id*.

*Id*. at *8.

The United States Court of Appeals for the Sixth Circuit has held that plain error review does not constitute a waiver of the state's procedural default rules. *Seymour*, 224 F.3d at 557. As explained by the United States District Court for the Northern District of Ohio:

> Ohio has a contemporaneous objection rule under which an appellant who fails to object waives later review of the issue unless plain error can be shown. *Williams v. Bagley,* 380 F.3d 932, 968 (6th Cir.2004), *cert. denied*, 544 U.S. 1003, 125 S.Ct. 1939, 161 L.Ed.2d 779 (2005) (citing *State v. Smith*, 89 Ohio St.3d 323, 332, 731 N.E.2d 645 (2000)). The Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal review absent a showing of cause for the waiver and resulting prejudice. *Id.; Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001); *Stojetz v. Ishee*, 2006 WL 328155 *12 (S.D.Ohio Feb.10, 2006).
>
> A state court's review of an issue for plain error is considered by the Sixth Circuit as the enforcement of a procedural default. *Williams,* 380 F.3d at 968; *Hinkle*, 271 F.3d at 244. The federal court, in determining whether a state court has relied on a procedural rule to bar review of an issue, examines the latest reasoned opinion of the state courts and presumes that later courts enforced the bar instead of rejecting the claim on the merits. *Hinkle*, 271 F.3d at 244 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)).

*Adams v. Bradshaw*, 484 F.Supp.2d 753, 771 (N.D.Ohio 2007). This Court likewise concludes that petitioner has waived the right to present claims one and nine in these habeas corpus proceedings.

Therefore, Petitioner has procedurally defaulted claims one, five through nine, and eleven. He may still secure review of these claims on the merits if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges. *See Coleman*, 501 U.S. at 753.

The constitutionally ineffective assistance of counsel may constitute cause for a procedural default, so long as such claim has been presented to the state courts and is not, itself,

procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. at 451-52 (citing *Murray v. Carrier*, 477 U.S. at 488–89).

As cause for his procedural default of claim one, Petitioner alleges the denial of the effective assistance of counsel, and he makes this same allegation in habeas corpus claim ten. For the reasons discussed *infra*, however, the Court concludes that Petitioner has failed to establish the denial of the effective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner has therefore failed to establish cause for his procedural default of this claim, or for his procedural default of claims five through nine and eleven.

The United States Supreme Court has held that a claim of actual innocence may be raised "to avoid a procedural bar to the consideration of the merits of [a petitioner's] constitutional claims." *Schlup*, 513 U.S. at 326–27. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray,* 477 U.S. at 496. In *Schlup,* the Supreme Court held that a credible showing of actual innocence was sufficient to enable a court to reach the merits of an otherwise procedurally-barred habeas petition. *Id.* at 317. An actual innocence claim under *Schlup* is "'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Id.* at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

The actual innocence exception allows a petitioner to pursue his constitutional claims if it is "more likely than not" that new evidence – *i.e.,* evidence not previously presented at trial - would allow no reasonable juror to find him guilty beyond a reasonable doubt. *Souter v. Jones*,

395 F.3d 577 (6th Cir. 2005). The Court of Appeals for the Sixth Circuit explained this exception as follows:

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup,* 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled, however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Id.* at 589–90 (footnote omitted). Petitioner does not meet this standard. The Court's independent review of the *Petition* and of the record fails to reveal that any "new facts" have arisen that undermine the result of Petitioner's trial. Petitioner cannot, therefore, establish a claim of actual innocence sufficient to avoid his procedural defaults.

In short, claims one, five through nine, and eleven are procedurally defaulted.

**Merits**

Standard of Review

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court determinations. The United State Supreme Court recently described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, ─── U.S. ────, ────, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

The factual findings of the state appellate court are presumed to be correct.

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). "Under AEDPA, a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1) (a petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law"); 28 U.S.C. §

13

2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding"). The United States Court of Appeals for the Sixth Circuit recently explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley,* 706 F.3d at 748–49. The burden of satisfying the standards set forth in § 2254 rests with the petitioner. *Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, . . . [t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith,* 539 U.S. 510, 520–21, (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)); *see also Harrington v. Richter*, 131 S.Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009)

("'[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.'" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*))); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision).Similarly, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a federal habeas court must review the state court's decision based solely on the record that was before it at the time it rendered its decision. *Pinholster*, 563 U.S. at 181. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 182.

<u>Claim two</u>

In claim two, Petitioner alleges that the trial court improperly sentenced him to consecutive terms of incarceration on two counts of kidnapping and aggravated burglary, in violation of Ohio law and the Double Jeopardy Clause of the United States Constitution.  The state appellate court rejected this claim as follows:

> [A]ppellant argues his convictions for kidnapping and the second count of aggravated burglary should have merged for purposes of sentencing because they are allied offenses of similar import. We disagree.
>
> With respect to victims Larry and Becky Orndorff, appellant was indicted upon, convicted of, and sentenced upon one count each of kidnapping pursuant to R.C. 2905.01(A)(2). Appellant argues the trial court should have merged the second count of aggravated burglary pursuant to R.C. 2911.11(A)(2) (Count Four) for purposes of sentencing.
>
> R.C. 2941.25 states as follows:
>
> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the

15

indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

In *State v. Johnson*, the Ohio Supreme Court modified the test for determining whether offenses are allied offenses of similar import. 128 Ohio St.3d 1405, 2010–Ohio–6314. The Court directed us to look at the elements of the offenses in question and determine whether or not it is possible to commit one offense and commit the other with the same conduct. If the answer to such question is in the affirmative, the court must then determine whether or not the offenses were committed by the same conduct. If the answer to the above two questions is yes, then the offenses are allied offenses of similar import and will be merged. If, however, the court determines that commission of one offense will never result in the commission of the other, or if there is a separate animus for each offense, then the offenses will not merge according to *Johnson, supra.*

Count Four, aggravated burglary pursuant to R.C. 2911.11(A)(2), states in pertinent part, "No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if * * * [t]he offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control." Appellant was also convicted of one count of kidnapping pursuant to R.C. 2905.01(A)(2), which states, "No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: [t]o facilitate the commission of any felony or flight thereafter."

Under the facts of this case, the aggravated burglary was complete when appellant entered the house for the second time. Upon awakening the Orndorffs and subjecting them to prolonged restraint, and forcing Becky Orndorff into the garage at gunpoint, the offense of kidnapping was committed with a separate animus.

16

The aggravated burglary offense is not an allied offense of kidnapping under these circumstances.

Appellant's [] assignment of error is overruled.

*State v. Riley*, 2013 WL 1343548, at *4-5.

Although the state appellate court rejected Petitioner's claims by reference to Ohio's statute on allied offenses, *i.e.,* O.R.C. § 2941.25, and pursuant to the directive of the Ohio Supreme Court, and did not explicitly refer to federal law addressing the constitutional mandates of the Double Jeopardy Clause, this Court has previously concluded that Ohio law in this regard is derived from the same concerns as those of the Double Jeopardy Clause. *See, e.g., Cody v. Jeffreys*, No. 2: 10–cv–974, 2013 WL 170268 at *4–*5 (S.D. Ohio Jan.16, 2013) (citing *Palmer v. Haviland*, No. C–1–04–28, 2006 WL 1308219 (S.D. Ohio May 11, 2006); *Spence v. Sheets*, 675 F.Supp.2d 792 (S.D. Ohio 2009); *Helton v. Jeffreys*, No. 2:06–cv–558, 2007 WL 1100428, at *4–*5 (S.D. Ohio April 10, 2007). Although couched in terms of state law, the state court's decision rejecting Petitioner's claim is therefore entitled to deference by this Court in its consideration of Petitioner's federal constitutional claim.[2]

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.  The clause has been interpreted as protecting criminal defendants from successive prosecutions for the same offense after acquittal or conviction, as well as from multiple punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161, 165 (1977). The traditional test for a double jeopardy claim is the "same elements" test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (requiring the court to determine whether each charged offense "requires proof of an additional fact which the

---

[2] To the extent that this claim alleges violation of state law, that claim offers no basis for federal habeas corpus relief. *See* 28 U.S.C. § 2254(a).

other does not").  The *Blockburger* test is designed to deal with the situation where closely

connected conduct results in multiple charges under separate statutes.  Under *Blockburger*, the

critical question is whether, in reality, the multiple charges constitute the same offense.  Thus,

the *Blockburger* test focuses on whether the statutory elements of the two crimes charged are

duplicative.  If the elements of the two statutes are substantially the same, then double jeopardy

is violated by charging the defendant under both.

> The Supreme Court has interpreted the multiple-punishments aspect of the Double Jeopardy Clause as protecting defendants from being punished more than once for a single act when the legislature does not intend for the punishments to be cumulative. *See Albernaz v. United States*, 450 U.S. 333, 344, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). In other words, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *see White v. Howes*, 586 F.3d 1025, 1035 (6th Cir.2009) ("The current jurisprudence allows for multiple punishment for the same offense provided the legislature has clearly indicated its intent to so provide, and recognizes no exception for necessarily included, or overlapping offenses."). When two different statutory provisions authorize punishment for the same act, "[t]he first step is to determine whether [the legislature] intended to punish cumulatively the same conduct which violates two statutes." *United States v. Johnson*, 22 F.3d 106, 107–08 (6th Cir. 1994); *see Ohio v. Johnson*, 467 U.S. 493, 499, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984) ("[T]he question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent.").
>
> ***
>
> Moreover, "[w]hen assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes." *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir.1989) (citing *Hunter*, 459 U.S. at 368, 103 S.Ct. 673; *O'Brien v. Skinner*, 414 U.S. 524, 531, 94 S.Ct. 740, 38 L.Ed.2d 702 (1974)). "Under the [D]ouble [J]eopardy [C]lause, when evaluating whether a state legislature intended to prescribe cumulative punishments for a single criminal incident, a federal court is bound by a state court's

> determination of the legislature's intent." *Id.* (citations omitted). "Thus, for purposes of double jeopardy analysis, once a state court has determined that the state legislature intended cumulative punishments, a federal habeas court must defer to that determination." *Id.*; *see Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005) (*per curiam*) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Jones v. Sussex I State Prison*, 591 F.3d 707, 710 (4th Cir. 2010) ("[W]hen the charged offenses violate state law, the double jeopardy analysis hinges entirely on the state-law question of what quantum of punishment the state legislature intended. Once a state court has answered that state-law question, there is no separate federal constitutional standard requiring that certain actions be defined as single or as multiple crimes." (internal citation and alteration omitted)).

*Volpe v. Trim,* 708 F.3d 688, 696-97 (6th Cir. 2013)(footnote omitted).

Petitioner was charged with aggravated burglary with a firearm specification. It was specifically alleged that, on December 13, 2008, Petitioner knowingly trespassed in an occupied structure, located at 3470 Piper Road, Zanesville, Ohio, when another person was present, with purpose to commit a theft offense, having a deadly weapon, to-wit: a shotgun or dangerous ordnance on or about his body or under his control, in violation of O.R.C. § 2911.11(A)(2).  He was also charged with kidnapping, alleged to have been committed on that same date. It was specifically alleged that he did, by force, threat, or deception, remove Larry and Becky Orndorff or restrain their liberty in order to facilitate the commission of an aggravated burglary and/or aggravated robbery, or flight thereafter, in violation of O.R.C. § 2905.01(A)(2).  *Indictment* (ECF No. 6-1, PageID# 147-49). Petitioner argues that the offenses of aggravated burglary and kidnapping are alleged to have been committed "through the same conduct with a single animus." *Reply*, PageID# 1223.  This Court disagrees.

19

Evidence at trial indicated that Petitioner and Jamie Hutton entered the Orndorffs' home with firearms and with the intent to rob the Orndorffs on two occasions: late on December 12, 2018, and again during the early morning hours of December 13, 2008.  After the second entry into the home, the co-defendants held the Orndorffs at gunpoint while robbing them of guns, cash, and other items.  After initially restraining the Orndorffs to their bed, they forced Becky Orndorff at gunpoint into the garage of the home so that she could show them where additional items of value were located.  The state appellate court reasonably concluded that these crimes constituted separate, distinct acts committed with a separate animus and warranting separate sentences.  *See, e.g., Jones v. Baker*, 35 F.3d 566, unpublished, 1994 WL 464191 (6th Cir. August 26, 1994) (no double jeopardy violation where kidnapping not "merely incidental" to aggravated robbery and involved substantial restraint of the victim); *Watkins v. Schotten*, 103 F.3d 132, unpublished, 1996 WL 690159 (6th Cir. Nov. 27, 1996) (no double jeopardy violation on aggravated robbery and kidnapping convictions where the offenses were committed separately with separate animus and since the crimes have separate elements); *McKitrick v. Smith*, No. 3:08CV597, 2009 WL 1067321 (N.D. Ohio April 21, 2009) (trial court's finding that petitioner had "separate animi" for robbery and kidnapping is due deference in habeas proceedings and therefore petitioner's convictions did not violate *Blockburger*).  Petitioner has failed to establish that the state appellate court's decision rejecting his Double Jeopardy Claim contravened or unreasonably applied federal law or resulted in an unreasonable determination of the facts in light of the evidence presented.

Claim two is without merit.

Claim three

In claim three, Petitioner alleges that his convictions were against the manifest weight of the evidence and that the evidence is constitutionally insufficient to sustain his convictions. The state appellate court rejected this claim in relevant part as follows:

> The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

> In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins,* [78 Ohio St.3d 380], 386 [(1997)]. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id*.

> Appellant was convicted upon one count of aggravated burglary, one count of theft of firearms, and one count of theft in an amount greater than $1000 and less than $7500 related to the first entrance into the home on December 12, 2008. He was convicted of one count of aggravated burglary, one count of theft of firearms, one count of theft in an amount greater than $7500 and less than $150,000 and two counts of kidnapping for the return to the home in the early morning hours of December 13, 2008 and encounter with the Orndorffs.

> Appellee's evidence consisted of the testimony of the Orndorffs, who were not able to specifically identify appellant but did provide

> a link to him because he dated their granddaughter, had been in their home, and was aware they had ready cash and firearms. Hutton, Barlow, and Funk detailed the events the night of the home invasion and appellant's involvement therein. DNA consistent with appellant was found on a metal bar under the deck of the residence, found with a radio removed from the Orndorffs' daughter's car. Appellant's girlfriend testified about his admissions to her. The cell phone evidence implicated Barlow and Hutton, which led to appellant.
>
> Appellant does not indicate which element of which offense appellee failed to present sufficient evidence of. Nor does he point to any evidence in the record that the jury lost its way. Appellant's convictions are not against the manifest weight or sufficiency of the evidence and appellant's third assignment of error is overruled.

*State v. Riley*, 2013 WL 1343548, at *6-7.

A federal court may issue a writ of habeas corpus in favor of a person in custody pursuant to the decision of a state court only if his custody violates the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Thus, "[a] federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). A manifest weight of the evidence claim is an alleged error of state law that is not cognizable in this Court. Under Ohio law, "[w]eight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. . . .'" *State v. Thompkins*, 78 Ohio St.3d at 386 (citations omitted). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id*. A federal habeas court, however, may not "reweigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court" because, in habeas proceedings, "[i]t is the province of the factfinder to weigh the

22

probative value of the evidence and resolve any conflicts in testimony." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citations omitted).

Because a federal habeas court does not function as an additional state appellate court vested with the authority to conduct such an exhaustive review, Petitioner's claim that his convictions were against the manifest weight of the evidence cannot be considered by this Court.

Petitioner also alleges that the evidence is constitutionally insufficient to sustain his convictions. A criminal defendant may be convicted consistent with the United States Constitution only if the evidence adduced at trial is sufficient to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). To determine whether the evidence was sufficient to support a conviction, a court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson,* 443 U.S. at 319). The prosecution is not affirmatively required to "'rule out every hypothesis except that of guilt.'" *Id.* (quoting *Jackson*, 443 U.S. at 326). "[A] reviewing court 'faced with a record that supports conflicting inferences must presume, even if it does not appear on the record, that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id*. (quoting *Jackson,* at 326).

Further, this Court must afford a "double layer" of deference to state court determinations about the sufficiency of the evidence. As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), deference is due the jury's finding of guilt because the standard, established by *Jackson v. Virginia*, is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Even if *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still

defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id*.; *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

Petitioner was initially indicted on two counts of aggravated burglary with firearm specifications, four counts of theft, two counts of aggravated robbery, and two counts of kidnapping. *Indictme*nt (ECF No. 6-1, PageID# 146.) Prior to trial, the State dismissed the two aggravated robbery charges and the firearm specification relating to the aggravated burglary charge in Count 1. *Transcript* (ECF No. 7-2, PageID# 503.) On February 6, 2012, at a merger hearing, the trial court merged Counts 2 and 3 (charging Petitioner with theft of firearms and theft) with the aggravated burglary charge in Count 1, and also merged Counts 7 and 8 (charging Petitioner with theft of firearms and theft) with the aggravated burglary charge in Count 4. The trial court also merged the firearm specifications and sentenced Petitioner on only one firearm specification. *Transcript* (ECF No. 7-6); *Sentencing Entry* (ECF No. 6-1, PageID# 160.) The Court imposed an aggregate term of 23 years' incarceration. *Sentencing Entry* (ECF No. 6-1, PageID# 160)

Petitioner argues that the evidence is constitutionally insufficient to sustain his convictions on the two counts of aggravated burglary and kidnapping because his physical description did not match that provided by Larry and Becky Orndorff and because the Orndorffs were unable to identify Petitioner as a perpetrator of the offense. Petitioner contends that "[t]he state court decision would have been different if it had properly considered and applied all relevant facts." *Reply*, PageID# 1225.) Petitioner's arguments are not persuasive.

In addition to the evidence referred to by the state appellate court, Larry Orndorff testified that, on December 12, 2008, he went to bed at approximately 10:00 p.m., and was awakened at approximately 2:00 a.m. on December 13, 2008, to find the doorway of his house

open. *Transcript* (ECF No. 7-2, PageID# 592.) An unknown individual stepped out from behind the door with a shotgun and pointed it at him. Orndorff ran to his bedroom. *Id.* at PageID# 593-94. The intruder wore a mask and ordered Orndorff to lie on the bed and to cover his head with a pillow. The gunman said that he was looking for drugs, money, and guns. *Id.* at PageID# 596. The intruders also ordered Orndorff's wife, Becky, onto the bed while they searched the home. *Id.* at PageID# 597. One of the intruders forced Becky Orndorff at gunpoint to take him to the garage behind the house to look for additional property to steal. *Id.* at PageID# 598. At that time, he told the other intruder to shoot Larry Orndorff if he moved. *Id.* After Becky was permitted to return to the bedroom, the intruders attempted to tie up Larry Orndorff. *Id.* at PageID# 599-600. Once they left, Larry Orndorff went to his daughter's house to telephone police, because his home telephones had been disconnected. *Id.* at PageID# 601. The burglars stole numerous items from the home, including cash, guns, cameras, and Christmas presents. The total loss was estimated at $8,820. *Id.* at PageID# 613.

Becky Orndorff testified that she woke up to see an unknown individual pointing a shotgun at her husband's chest. That individual told her to get into the bed or he would blow her head off. *Id.* at PageID# 624. He ordered her to lie down on the bed with her face in the pillow and her hands behind her head. *Id.* at PageID# 625. The intruders said that they wanted money and threatened to blow the Orndorffs' heads off. *Id.* at PageID# 627. One of the intruders held a gun to the back of Becky Orndorff's head while forcing her to take him to the garage to find more money. He threatened to kill her husband. *Id.* at PageID# 629. The intruders thereafter forced Becky Orndorff at gunpoint back into the bedroom, and onto the bed, face down, with her hands behind her head. *Id.* at PageID# 634.

Keela Davis, who shares a child with co-defendant Ryan Barlow, initially implicated Petitioner in the crimes charged.  She wanted to use her information regarding the robbery as leverage to enable her to move with her son to Texas.  *Id.* at PageID# 746.  Davis went to Jamie Hutton's apartment on the night of the robbery to party; Ryan Barlow, Jamie Hutton, and Blake Riley were there.  There was money on the table, as well as a camera and a gun.  *Id.* at PageID# 747-49.  The others described to her how Riley and Hutton had robbed the Orndorffs at gunpoint. *Id.*  Riley threatened to hurt Davis if she told anyone, so she did not call the police.  *Id.* at PageID# 751.

Brittany Funk was a friend and former girlfriend of Ryan Barlow.  *Id.* at PageID# 768. Funk testified that, on December 13, 2008, Barlow called her and asked her for a ride.  She picked up Barlow, Riley, and Hutton, and dropped off Riley and Hutton at an apartment located behind a Speedway station.  *Id.* at PageID# 769-70.  Funk drove around with Barlow until he received a telephone call and told her that they needed to go back and pick up Riley and Hutton. *Id.* at PageID# 771.  When they arrived, she saw Riley and Hutton carrying lots of guns.  They told her to pop the trunk, and they put the guns inside the trunk of the car.  *Id.* at PageID# 773; 776.  She did not give this information to the police because she was afraid.  *Id.* at PageID# 775.

Ryan Barlow also testified at trial.  Barlow was incarcerated at the time, serving a sentence of seven years.  *Id.* at PageID# 795.  On the date in question, he drove with Petitioner in Jamie Hutton's red Dodge truck to a cornfield across from the Orndorffs' house.  Barlow waited by the truck while Petitioner and Hutton went into the home.  When they returned, they were happy and had a lot of money and guns.  *Id.* at PageID# 799-801.  They all drove back to Hutton's house where they counted the money.  *Id.* at PageID# 801.  Petitioner and Hutton wanted to go back and get more money.  *Id.*  They called Brittany Funk to give them a ride.

They dropped Petitioner and Hutton off at the Orndorffs' house, and Hutton said that he would call when they needed a ride back. *Id.* at PageID# 802-03. Barlow and Funk later returned to pick up Hutton and Petitioner, who threw the stolen items into the trunk of the car. *Id.* at PageID# 805-06.

Jamie Hutton was serving a sentence of sixteen years at the time of trial. *Id.* at PageID# 819. Hutton confirmed that he drove Barlow and Petitioner to the Orndorffs' house on the night in question, and they returned a second time later that night to steal more items from the home. *Id.* at PageID# 822-23. Hutton corroborated the testimony of the other prosecution witnesses. He testified that they tied up the Orndorffs and pointed a shotgun at Becky Orndorff's head. *Id.* at PageID# 829.

This Court concludes that, when viewing all the evidence in the light most favorable to the prosecution, the evidence was constitutionally sufficient to sustain Petitioner's convictions. The state appellate court's decision denying Petitioner's claim of insufficiency of the evidence does not warrant federal habeas corpus relief.

Claim three is without merit.

Claim four

In claim four, Petitioner alleges that the trial court lacked jurisdiction because he was under eighteen years of age at the time of the alleged offense and was not properly bound over from the juvenile court.[3] The state appellate court rejected this claim as follows:

> It is undisputed appellant was age 17 at the time of the offense. Pursuant to R.C. 2152.10(A)(2)(b), appellant was subject to mandatory transfer. "A child who is alleged to be a delinquent child is eligible for mandatory transfer and shall be transferred as provided in section 2152.12 of the Revised Code in any of the

---

[3] Respondent contends that Petitioner has procedurally defaulted this claim by failing to contemporaneously object at trial. *Return of Writ*. However, because the state appellate court appears to have addressed at least a portion of Petitioner's claim in this regard, this Court will consider the merits of the claim.

> following circumstances: The child is charged with a category two offense, other than a violation of section 2905.01 of the Revised Code, the child was sixteen years of age or older at the time of the commission of the act charged, and either or both of the following apply: The child is alleged to have had a firearm on or about the child's person or under the child's control while committing the act charged and to have displayed the firearm, brandished the firearm, indicated possession of the firearm, or used the firearm to facilitate the commission of the act charged." Appellant was charged with a number of Category Two offenses pursuant to R.C. 2152.02(CC)(1), including aggravated burglary and kidnapping.
>
> Appellant argues, though, the juvenile court failed to consider amenability factors and failed to order a mental health evaluation. We find no authority for such requirement for mandatory transfers, nor does appellant offer any.
>
> Appellant also argues the juvenile complaint was improper because it does not state where the offense took place. It is well established, though, that failure to object or otherwise raise venue issues in a juvenile complaint waives the matter on appeal. *See, e.g., State v. Loucks*, 28 Ohio App.2d 77, 82, 274 N.E.2d 773 (4th Dist.1971).

*State v. Riley*, 2013 WL 1343548, at *7.

As noted *supra*, a federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. at 41. A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris,* 845 F.2d 610, 614 (6th Cir. 1988). "'[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure'" when considering a habeas petition. *Id*. (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). It is only where the error resulted in the denial of fundamental fairness will habeas relief be granted. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Such are not the circumstances here.

Claim four involves the alleged violation of state law, and offers no basis for federal habeas corpus relief.

Claim Ten

In Claim ten, Petitioner alleges that he was denied the effective assistance of counsel, and

he argues as follows in support of this claim:

>Defense counsel failed to object to the use of the size 9 ½ shoe/ 12 inch long shoe photographs and failed to continue to investigate the shoe sizes of Barlow, Hutton and others.
>
>Counsel ineffectively cross-examined the State's primary witnesses Barlow, Hutton and Funk by not confronting Barlow and Hutton with their written plea agreements, and by not requiring the proffers and deals in writing for all of them, and their recordings, to be presented by the State.  He further failed to secure the appropriate jury instructions regarding these witnesses.
>
>Defense counsel stipulated to DNA evidence of Shawn Weiss from LabCorp, regarding the so-called presence of Blake Riley's DNA on a steel bar, when in fact Shawn Weiss was not the person who tested the steel bar, and had Shawn Weiss testified, his testimony would have been excluded as a *Crawford v. Washington*, 541 U.S. 36 (2004), Confrontation Clause violation.  *Melendez-Diaz v. Massachusetts*, 129 S.Ct. 2527 (2009).

*Reply*, PageID# 1241-42.)

The state appellate court rejected Petitioner's claim of ineffective assistance of counsel as

follows:

>[A]ppellant asserts he received ineffective assistance of trial counsel. We disagree.
>
>To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See, Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

"There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id*. at 690.

Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

Appellant summarily asserts trial counsel made the following strategic errors: he failed to object to use of photographs of a shoe and to investigate shoe sizes of witnesses; he didn't effectively cross-examine the accomplices on their plea agreements or seek appropriate accomplice jury instructions, and finally he stipulated to the testimony of a forensic witness.

Each of the decisions cited by appellant, with the exception of trial counsel's failure to seek accomplice jury instructions, constitutes a matter of trial strategy, for which we generally afford counsel a broad range of deference. Tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

Counsel's failure to seek an accomplice instruction was arguably ineffective under the first prong of *Strickland, supra*, but appellant has not even attempted to make an argument under the second prong, and therefore fails to show the result of the proceeding would have been different had an accomplice instruction been given. As we have stated *infra,* appellant's convictions were not against the manifest weight of the evidence. We are unable to find appellant suffered actual prejudice as a result of counsel's failure to seek an accomplice jury instruction.

*State v. Riley*, 2013 WL 1343548, at *8-9.

In finding that the trial court's failure to issue accomplice jury instructions[4] did not

constitute plain error, the state appellate court stated as follows:

---

[4] Petitioner complains that the trial court failed to issue a jury instruction under O.R.C. § 2923.03(D), which provides:

We find no plain error with regard to the testimony of Barlow and Hutton. The scope of cross examination of both was extensive and without constraint by the trial court. The jury was told the lengths of their sentences due to their involvement in this crime. The jury instructions, as in *Davis,* contained only the standard language about witness credibility. Barlow and Hutton's testimony was also unfavorable to appellant: both put him squarely in the midst of both aggravated robberies, suggesting the locale, in the residence, holding a shotgun to the Orndorffs and carrying out firearms and other property. However, we find this case distinguishable from *Davis, supra*, and more akin to *State v. Yarbrough,* 104 Ohio St.3d 1, 2004–Ohio–6087, 817N. E.2d 845, ¶ 83, because the evidence of appellant's involvement in the home invasion did not rest solely upon the accomplices' testimony. Other evidence of appellant's involvement existed and therefore the trial court's failure to give the accomplice jury instruction was not plain error.

With regard to the testimony of Brittany Funk, we find no plain error. Appellant has not explained how Brittany Funk was an accomplice. She was not charged as a result of her involvement. Generally, "[a]t minimum, an accomplice must be someone who has been indicted for the crime of complicity." *State v. Smith*, 9th Dist. No. 25650, 2012–Ohio–794, ¶ 22. Otherwise, an accomplice instruction may become necessary only in certain "rare circumstances" where a person might have been an accomplice, but was never indicted, such as a situation in which he or she received immunity in exchange for his or her testimony. *Id* . Funk was never charged as an accomplice and received no special treatment for her cooperation and testimony. Funk testified she was unaware of any plans to rob the Orndorff home; and denied any involvement in the crime. Appellant has not shown Funk was actually an accomplice or that her status was such that this was one of the "rare circumstances" where an accomplice instruction was warranted. *See Id*.

---

(D) If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:

"The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.

It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."

> Funk was not indicted for complicity, nor was any evidence presented to show that she received any type of favorable treatment in exchange for testifying against appellant. Therefore, the trial court was not required to give the cautionary instruction to the jury. *State v. Howard*, 5th Dist. No. 06CAA100075, 2007–Ohio–3669, ¶ 60.
>
> The trial court did not commit plain error in failing to give an accomplice instruction and appellant's first assignment of error is overruled.

*Id*. at *4.

"In all criminal prosecutions," the Sixth Amendment affords "the accused . . . the right . . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted).  The United States Supreme Court set forth the legal principals governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). *Strickland* requires a petitioner claiming the ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. *Id.* at 687; *Hale v. Davis*, 512 F. App'x 516, 520 (6th Cir. 2013). A petitioner can establish the deficient performance of his counsel by demonstrating "that counsel's representation fell below an objective standard of reasonableness." *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (citing *Strickland,* 466 U.S. at 687).  To make such a showing, a petitioner "must overcome the 'strong [] presum[ption]' that his counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  *Poole v. MacLaren*, 2013 WL 6284355 at *5 (quoting *Strickland*, 466 U.S. at 687).  "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland,* 466 U.S. at 689).

The United States Supreme Court has recently cautioned federal habeas courts to "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Harrington v. Richter*, 131 S.Ct. at 788. The Supreme Court observed that, while "'[s]urmounting *Strickland*'s high bar is never . . . easy,' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is even more difficult. . . ." *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, ——, 130 S.Ct. 1473, 1485 (2010) (and citing *Strickland*, 466 U.S. at 689). The Supreme Court instructed that the standards created under *Strickland* and § 2254(d) are both "'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

Rod Copeland, a friend of Larry Orndorff's daughter, went to the Orndorffs' home the day following the burglary and found a steel bar underneath the deck of the house. *Transcript* (ECF No. 7-3, PageID# 721.) The parties stipulated that Shawn Weiss, if called as a witness, would testify that he had received a request to conduct DNA testing on the steel bar and, as a result of that testing, determined that the DNA profile from the steel bar was a mixture of DNA consistent with Larry Orndorff and Blake Riley and at least one other unknown individual, and that the probability of randomly selecting a person unrelated to Blake Riley with the same DNA profile found on the steel bar was one in 71,400,000. *Id.* at PageID# 863-64.

Additionally, police located footprints leading from the house to the roadway, one consistent with a size 12 shoe. *Id.* at PageID# 666. The prosecutor obtained photographs during trial of boots that had belonged to the Petitioner. *Id.* at PageID# 793; 844. That boot was size

33

9½  medium and measured twelve inches long.  *Id.* at  PageID# 845. Petitioner's mother, Mary Denise Kovalchik, testified that the 9½ shoes were too large for Petitioner, and that Petitioner actually wore a size 8 shoe when he was a senior in high school.  *Id.* at  PageID# 919.

Petitioner has failed to establish that he was denied the effective assistance of counsel based on his attorney's failure to object to the admission of evidence regarding Petitioner's shoe size or of the photographs of the shoe print found in the area of the crime.  There was evidence that Petitioner did not wear a size 12 shoe, and the fact that one of the co-defendants may or may not have worn a size 12 shoe would not necessarily have assisted Petitioner's defense.  Further, the record does not indicate that the prosecution could not have submitted, in the absence of a stipulation by defense counsel, evidence regarding the results of DNA testing on the steel bar found beneath the Orndorffs' deck. There was also evidence that Petitioner had dated the Orndorffs' granddaughter, Ashley, who lived next door, and that he had frequented the Orndorffs' house on numerous occasions.  *Id.* at PageID#  848-49, 855-56.  Defense counsel argued that Petitioner had worked on Ashley's car at her grandfather's garage, *id.* at PageID# 854, thereby suggesting a reasonable, and legitimate, alternative explanation for the presence of Petitioner's DNA.

Further, the prosecution witnesses were subject to cross examination, including cross-examination as to bias and motive for testifying against Petitioner. On cross-examination, Ryan Barlow acknowledged that he had lied when he first spoke with police, and that he later obtained a reduced sentence by admitting that he acted as the "look out."  *Id.* at  ECF No. 7-3, PageID# 811.  He faced a possible sentence of sixteen years' imprisonment, *id.* at PageID# 812, and his sentence of seven years' incarceration was the result of his "plea deal." *Id.* at PageID# 811. Jamie Hutton admitted that he had lied to the authorities on multiple occasions.  *Id.* at  PageID#

836.  He had denied any involvement in the crimes, claimed to have acted only as a look out, and denied having any involvement other than carrying firearms out of the home.  *Id.* at  PageID# 836-38.  He initially told police that he had only obtained a couple hundred dollars for his participation in the crimes, but later admitted that the participants had split the proceeds evenly. *Id.* at  PageID# 838-39.

In view of this record, this Court is not persuaded that Petitioner has established that the state appellate court's rejection of Petitioner's claim of denial of the effective assistance of counsel warrants federal habeas corpus relief.

Claim ten is without merit.

### Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

### Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendati*on will result in a waiver of the right to have the district judge review the *Report*

*and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

  *s/  Norah McCann King*  
Norah McCann King  
United States Magistrate Judge  
March 3, 2016